WILCOX *v.* MUELLER.

1. COVENANTS—RESTRICTIONS—PARTIES CHARGED WITH NOTICE.

   All parties of interest are charged with notice of recorded restrictions in plat of subdivision.

2. SAME—WHERE CONDITIONS OF WAIVER OF RESTRICTIONS NOT MET ORIGINAL RESTRICTIONS IN FORCE.

   Where restrictions were waived in writing by all owners of lots in subdivision for purpose of allowing four lots to be replatted, but instead of replatting the owners sold them, purchasers of two of the lots may not replat under said waiver agreement, since conditions of waiver were not met, and original restrictions are therefore still in force.

3. SAME—INJUNCTION—ESTOPPEL.

   That there may have been some deviation from restrictions on plat is not alone ground for refusing to enforce them to extent they remain beneficial, especially where deviation is in another part of subdivision.

4. SAME—VIOLATION OF RESTRICTION NO BAR TO ENFORCING OTHER BENEFICIAL RESTRICTION.

   Lot owner violating building restriction might be estopped to enjoin like violation by a neighbor, and not estopped to ask observance of restrictions in other beneficial respects.

5. SAME—WAIVER—ESTOPPEL.

   In suit by owners of lots in subdivision to enjoin violation of restrictions by replatting two lots, plaintiff's right to relief, *held*, not barred by waiver or estoppel.

Appeal from Kent; Dunham (Major L.), J. Submitted January 17, 1930. (Docket No. 38, Calendar No. 34,713.) Decided March 7, 1930.

Bill by Caroline B. Wilcox and others against Frederick H. Mueller and others to enjoin violation

of building restrictions. From a decree for defendants, plaintiffs appeal. Reversed.

*Butterfield, Keeney & Amberg,* for appellants.

CLARK, J. The bill was filed to enjoin violation of restrictions of San Lu Rae plat, East Grand Rapids. From a decree for defendants, plaintiffs, owners of adjoining and other lots in the subdivision, have appealed.

The lots were large, averaging nearly "3.7 acres to a home," "fine properties," "practically an estate section." Lake Drive and San Lu Rae Drive were principal streets.

A restriction: "* * * only one single dwelling house shall be built on any one lot in said addition, except that the lots facing on Lake drive, San Lu Rae Drive. * * * may be so subdivided as to build one single dwelling house on not less than one hundred seventy-five feet of frontage."

All parties of interest are charged with notice of the restrictions.

Lots 9, 10, 11, 12 form a rectangle between the streets named, 9 and 10 fronting on Lake Drive and abutting 11 and 12, and 11 and 12 fronting on San Lu Rae Drive and abutting 9 and 10. In 1920 these four lots were owned very largely at least by persons named Young, who wished to dispose of them and found difficulty because of the large size of the lots. They wished to subdivide them to facilitate sale. They applied to plaintiff Mrs. Wilcox, owner of perhaps the largest interest in the platted addition, and to others for permission to do so. After negotiation, the following paper was signed by all parties in interest:

"Know all men by these presents, that the undersigned being all the owners of property in San-Lu-Rae Addition, in the village of East Grand Rapids, Kent county, Michigan, do each hereby waive the provisions relative to building restrictions contained in an agreement heretofore executed by the owners of all the lots in said addition, in so far as the same applies to lots 9, 10, 11 and 12, and consent that said lots may be replatted with a street 60 feet wide through the center thereof, extending from Lake Drive to San-Lu-Rae Drive. The lots facing San-Lu-Rae Drive to be not less than 75 feet in width. The lots facing Lake Drive to be not less than 150 feet in width. Lots facing the new street to be not less than 90 feet in width.

"It is further agreed, that in selling such replatted lots, the owners thereof will place a building restriction in each deed or contract, providing that not more than one house shall be built on any lot, and requiring each house facing on Lake and San-Lu-Rae drives to be not less than 75 feet from the front line of said lots, and those facing on the new street not less than 40 feet from the front line of said lots, and to cost not less than $8,000 at the present price of labor and material. Also that no house or garage shall be built within 20 feet of the side line of any lot without the written consent of the adjoining property owner. Also that no cement blocks shall be used for exterior construction and no fence shall be built on any part of any lot nearer the street line than the building line fixed for residences and houses facing Lake Drive shall not be less than 50 feet from the new street line.

"In witness whereof, we have each executed this waiver for the express purpose of releasing the above lots in said addition from said restrictions, and establishing new restrictions in lieu thereof.

"Dated this 10th day of December, 1920."

The Youngs did not subdivide. They requested Mrs. Wilcox, to whom the lots were mortgaged, to purchase them. She accepted deed of lots 11 and 12, and the mortgages were discharged. Mrs. Wilcox built a dwelling which stands partly on both of the lots. The Youngs conveyed lots 9 and 10, and title is now in defendants, who seek to record a plat and to subdivide lots 9 and 10 by which a dead end street to be called Ramona, 60 feet wide, will be laid on and along the dividing line between the lots to within 60 feet of the back line of lots 11 and 12. It is proposed to have 2 lots 150 feet wide facing Lake Drive and 7 lots 90 feet wide fronting on Ramona. It is also intended that building restrictions, substantially like those set forth in the quoted document, shall be imposed on these lots. Sale of the lots and building thereon under such restrictions are also contemplated. Plaintiffs contend that the granted permission to subdivide or waiver of restrictions is not now operative, and that the original restrictions are still on lots 9 and 10 and may not be violated.

Does the quoted document waive absolutely the original restrictions? Clearly it does not. It waives them conditionally. The conditions are set forth in the document. The Youngs have sold lots 11 and 12 without platting. Thereafter the conditions could be met only by action of all owners of the lots. There has been no such action. The proposed platting by defendants, owners of but two of the lots, is not a compliance with the conditions. It is a breach of them, and should be enjoined. A reading of the quoted document in its entirety shows that the original restrictions were to be lifted on compliance with the conditions set forth. It is not that until or unless there was compliance the lots were to be unrestricted, but that until there was compli-

ance the original restrictions would remain. There has been no compliance, hence original restrictions are in force.

Defendants purchased with full knowledge of the document in question. It speaks for itself. And it refers to the original restrictions.

That there may have been some deviation from the restrictions is not alone ground for refusing to enforce them to the extent that they remain beneficial, *Putnam* v. *Ernst,* 232 Mich. 682, and especially is that true where the deviation is in another part of the subdivision. *Harvey* v. *Rubin,* 219 Mich. 307; *Benzing* v. *Harmon,* 219 Mich. 532. It is urged that Mrs. Wilcox has violated a restriction in erecting a garage or lodge on her property. We are not fully persuaded that there was such violation, but granting it, she might be estopped to enjoin a like violation by her neighbor, and not estopped to ask observance of restrictions in other beneficial respects. *Moreton* v. *Palmer & Co.,* 230 Mich. 409. As applied to property, the restrictions sought to be violated remain beneficial. As against plaintiffs' prayer for relief, we find neither waiver nor estoppel. *Nechman* v. *Ross,* 225 Mich. 112; *Erichsen* v. *Tapert,* 172 Mich. 457.

Reversed. Plaintiffs will have decree for relief prayed, with costs of both courts.

WIEST, C. J., and BUTZEL, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred. McDONALD, J., did not sit.